A89A1745. JUMP et al. v. BENEFIELD et al.
(388 SE2d 864)

SOGNIER, Judge.

Benard Jump and Elaine Willis Jump brought suit against Clyde Wallace Benefield, Sr. and his son, Clyde Wallace Benefield, Jr., seek-

ing damages for the death of their minor son, Travis Jay Jump, who was a passenger in a truck driven by Benefield, Jr. which collided with a truck driven by a third party. Judgment was entered on a jury's verdict in favor of the Benefields, and the Jumps appeal.

The record reveals that on June 15, 1986, Benefield, Jr. drove the decedent from Eatonton south to Milledgeville in the Benefield pickup truck. Although the weather had been fair that afternoon, on the return trip to Eatonton, as they crossed a bridge near the Putnam County line, it began to rain or mist. Rain had fallen there and to the north earlier, and according to Benefield, Jr.'s testimony, water "was puddled up heavy" at the end of the bridge, and he lost control of the truck when it hit the standing water. The truck hydroplaned, turned sideways in the roadway and, after crossing the centerline, struck a pickup truck driven by Elizabeth Jones which was traveling in the southbound lane. The Benefield truck then spun around and came to rest facing the road at the opposite shoulder after the impact. The collision caused multiple injuries to Travis Jay Jump, from which he died. Benefield, Jr. testified that he traveled that route frequently and was familiar with the fact that the road "dipped" at the end of the bridge and that water normally accumulated there after a rain.

There were material conflicts in the evidence adduced with respect to the condition of the tires on the Benefield truck. Both appellees testified that a few days prior to the collision they noticed that all four tires on the truck were worn and needed to be replaced. However, Benefield, Sr., who had been a mechanic at State inspection stations and had sold tires for approximately 20 years, testified at trial that the tires were not below the minimum requirements for tread; that he measured the right front tire a few days prior to the collision and estimated that "with the miles that [his son] was driving, . . . [the tires] would last him four or five months," but he was planning to replace them the following week, when he was in Atlanta. Trooper C. J. Harris of the Georgia State Patrol testified similarly that the tires were worn, but not unsafe. Herbert J. Childs, an accident investigator hired by appellants, testified that he gauged each of the tires after the collision and recorded the measurements. Childs testified that "each of the four tires was worn down to or below the 2/32nds minimum tread required." On cross-examination, however, Childs admitted that none of the measurements he recorded was actually below the required 2/32nds minimum tread requirement, but testified that was due to the method he routinely uses, whereby anything between 1/32nd and 2/32nds is recorded as 2/32nds.

There were similar conflicts in the evidence regarding the speed of the Benefield truck at the time control of the vehicle was lost. Benefield, Jr. testified that he was traveling about 40 to 45 miles per hour when he lost control. Luther O. Cox, appellants' expert in acci-

dent reconstruction, testified that based on his calculations made after viewing photographs taken by Childs, it was his opinion the Benefield truck was traveling at least 55 miles per hour at the beginning of the loss of control.

1. Appellants contend the trial court erred by charging the jury on the legal principle of act of God, arguing that because " '[t]he term "act of God" in its legal sense applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them,' [cit.]" *Sampson v. Gen. Elec. &c. Corp.*, 78 Ga. App. 2, 8 (3) (50 SE2d 169) (1948), the evidence adduced at trial was insufficient to support such a charge, as witnesses to the collision testified that although the road was wet, if it was raining at all at the time of the incident, the rain was very light. However, the record reveals that the act of God claimed by appellees was a combination of the sudden nature of the rain (the weather having been fair and the road dry until the bridge) and the unusual amount of standing water (Benefield, Jr. having testified that although he was aware that water usually accumulated at the end of the bridge after a rain, the standing water at the end of the bridge on that day "was puddled up heavy" and covered a much larger area than usual).

In the case at bar the trial court did not instruct the jury that the weather conditions present would be considered an act of God, but simply defined "act of God" for the jury, and left it to them to determine whether the facts, as brought out by the evidence presented, fit that definition. As noted by appellees, such "definitive charging" was approved in this context in *Feathers v. Wilson*, 157 Ga. App. 753, 754-755 (2) (278 SE2d 434) (1981). Having determined that there was evidence, however slight, of unusual weather conditions, and noting that "[i]t is the duty of the trial court to charge the jury on the law applicable to the issues where there is any evidence on which to predicate the instructions, [cits.]," id. at 753 (1), we must agree with appellees that the trial court did not err by giving this charge.

2. Appellants also enumerate as error the trial court's instructing the jury regarding the legal principle of accident. Appellants do not contend the trial court's charge, which was taken from *Chadwick v. Miller*, 169 Ga. App. 338, 344 (312 SE2d 835) (1983), was an incorrect statement of the law, but that here, as in *Meacham v. Barber*, 183 Ga. App. 533, 537-538 (4) (359 SE2d 424) (1987), there was no evidence that the collision might have occurred without negligence on the part of Benefield, Jr., and that the charge was, therefore, inapplicable. However, because Trooper Harris testified that the size and weight of the Benefield vehicle, a Toyota pickup with an empty bed, would be a factor in explaining why that vehicle hydroplaned while other vehicles driving under the same conditions did not, and because the condition

of the tires and the speed of the Toyota truck were facts which were in dispute, the jury was authorized to conclude that the collision was not proximately caused by the negligence of appellees. "[T]he jury was fully charged as to the issue of negligence and was told that an incident must be wholly free from negligence or it cannot be a legal accident. [Appellants' evidence] raised an issue of operation of the [truck] within the speed limit and in a careful and prudent manner with the slide occurring wholly without warning and wholly without his control. It was for the jury to determine that issue. Where the jury is authorized under the alternatives submitted by the evidence to find that the collision was not proximately caused by negligence but could have resulted from an unforeseen or unexplained cause, there is ample reason to give a charge on the law of accident. [Cit.] Under the facts presented to the jury, the trial court did not err in submitting the issue of accident to the jury. [Cit.]" *Reed v. Heffernan*, 171 Ga. App. 83, 87 (318 SE2d 700) (1984).

3. Appellants contend the verdict is strongly against the weight of the evidence and, in fact, contrary to the evidence. "[W]eighing the evidence is a function for the jury and the trial court, not an appellate court. [Cits.]" *Verde v. Granary Enterprises*, 178 Ga. App. 773 (1) (345 SE2d 56) (1986). "On appeal, the evidence must be construed to uphold the jury's verdict, and the sole question for determination is whether there is any evidence to authorize the verdict. [Cits.]" *Gold Kist Peanuts v. Alberson*, 178 Ga. App. 253, 254 (1) (342 SE2d 694) (1986). "[W]here the evidence is in conflict and a properly instructed jury resolves the conflicts against the [appellants], and that decision is approved by the trial judge and is supported by the evidence of record, this court, in the absence of material errors of law, will affirm. [Cit.]" *Hester v. Baker*, 180 Ga. App. 627, 631-632 (6) (349 SE2d 834) (1986). We have determined in Division 2 of this opinion that the evidence was in conflict concerning material issues of fact, and that the jury was authorized to conclude that the collision was not proximately caused by appellees' negligence but resulted from an unforeseen or unexplained cause. Accordingly, we find the verdict was supported by some evidence, and affirm.

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 8, 1989 —
REHEARING DENIED NOVEMBER 21, 1989 —

*Sell & Melton, Mitchell P. House, Jr.*, for appellants.
*Robert S. Slocumb, George D. Lawrence*, for appellees.